1
2
3
4
5
6
7
8
9       UNITED STATES DISTRICT COURT
10      SOUTHERN DISTRICT OF CALIFORNIA
11

12   GRANT DALE HURLBERT,                    Case No.: 15-CV-0752-AJB-PCL

13                              Petitioner,  **ORDER:**

14   v.                                      **(1) ADOPTING THE REPORT AND**

15   KAMALA HARRIS; KATHLEEN                 **RECOMMENDATION, (Doc. No. 30);**
     McKENNA, Deputy Attorney General;
16   JEFFREY BEARD, Secretary of CDCR,       **(2) DENYING PETITION FOR WRIT**
                                             **OF HABEAS CORPUS, (Doc. No. 1);**
17                            Respondents.    **AND**

18
19                                           **(3) DENYING CERTIFICATE OF**
20                                           **APPEALABILITY**
21
22
23

24         On April 6, 2015, Grant Dale Hurlbert ("Petitioner"), a state prisoner proceeding *pro*

25   *se*, filed a petition for writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254.

26   (Doc. No. 1.) The Petition challenges Petitioner's state court conviction for first-degree

27   burglary. On November 5, 2015, Respondent filed a response to the Petition. (Doc. No.

28   19.) Petitioner filed a traverse on November 27, 2015. (Doc. No. 22.)

Magistrate Judge Peter C. Lewis issued a report and recommendation ("R&R") recommending the Petition be denied. (Doc. No. 30.) On June 20, 2016, Petitioner filed timely objections to the R&R. (Doc. No. 31.) Respondent did not reply. For the reasons set forth below, the Court **ADOPTS** the R&R, (Doc. No. 30), **OVERRULES** Petitioner's objections, (Doc. No. 31), **DENIES** the Petition, (Doc. No. 1), and **DECLINES** to issue a certificate of appealability.

### FACTUAL BACKGROUND

The Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut this presumption, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35–36 (1992) (holding that findings of historical fact, including inferences properly drawn therefrom, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal opinion:

> In May 2011, officers responded to a call reporting a stolen white Mercury Sable. Items left where the car was taken contained fingerprints matching those belonging to Hurlbert.
>
> About a month later, officers responded to a call from a store about a suspicious person in the store who drove away in a white Mercury Sable. The license plate number of the Mercury matched that of the stolen vehicle.
>
> As officers approached the store, they saw a white Mercury exit the parking lot of the store. As the Mercury approached, one of the officers turned his police vehicle into oncoming traffic in an attempt to [] stop the car. However, the Mercury drove around the officer's vehicle, veered into the construction area and sped away. At that point, one of the officers saw the driver of the Mercury and identified him as Hurlbert.
>
> Officer's [*sic*] engaged their lights and sirens and chased Hurlbert for approximately one to two minutes until he stopped at a dead end. Hurlbert jumped out of the Mercury and hit the hood of one of the officer's vehicles. One of the officers pulled out his gun, pointed it at Hurlbert and shouted, "Stop or I'll shoot." Hurlbert immediately took off running and hopped a nearby fence. After Hurlbert hopped the fence, one of the officers—before losing sight of him—saw Hurlbert empty his pockets and take off his black shirt and throw it on the ground. Hurlbert encountered and ran from at least two other

officers. Officers lost sight of Hurlbert after he ran up the driveway of a nearby residence.

Hurlbert walked onto the back deck of Wayne Tibbetts's residence and attempted to speak with Tibbetts's mother-in-law. However, she did not speak English and motioned for Hurlbert to go inside the house and speak to her daughter. Once inside the residence, Hurlbert spoke to Tibbetts's wife. However, she also did not speak much English and, thus, called for her husband.

When Tibbetts came downstairs, Hurlbert told him, "There's some people outside trying to hurt me." Tibbetts responded, "Who, the police?" Hurlbert did not respond and continued calmly walking through the house. As Hurlbert approached the kitchen door, he turned back and looked over his shoulder at Tibbetts, paused for a few seconds and then exited the house.

Police found Hurlbert a short time later in Tibbetts's yard under a tree and, although he was not wearing a shirt, a blue shirt was lying next to him on the ground. When officers contacted Hurlbert, he said, "Why are you doing this, I'm just . . . laying under a tree in my yard?" and "Why are you messing with me, this is my house . . . check my I.D." Hurlbert also asked the officers, "[W]hat color shirt was the guy wearing that you are looking for, because I have a blue shirt." When officers checked Hurlbert's pockets, they found a wallet with an I.D. that belonged to Tibbetts and a set of car keys.

Approximately 45 minutes after the incident, Tibbetts noticed his wallet and keys that he had left in a basket on the counter by the kitchen door were missing. Tibbetts called the police. The officers responded and showed Tibbetts the T-shirt, wallet and keys found on or near Hurlbert. Tibbetts identified the items as belonging to him.

(Doc. No. 20-14 at 3–4.)

## PROCEDURAL BACKGROUND

In a second amended information, Petitioner was charged with first-degree burglary (Cal. Penal Code §§ 459, 460), evading an officer with reckless driving (Cal. Veh. Code § 2800.2(a)), unlawful taking and driving of a vehicle (Cal. Veh. Code § 10851(a)), and resisting an officer (Cal. Penal Code § 148(a)(1)). (Doc. No. 20-9 at 31–32.) It was also alleged that Petitioner had previously been convicted of receiving a stolen vehicle (Cal. Penal Code § 496d). (*Id.* at 32.) Finally, it was alleged that Petitioner suffered one prison prior, as well as one prior serious felony conviction (Cal. Penal Code §§ 667(a)(1),

667.5(b), 668, 1192.7(c)). (*Id.* at 33.)

On April 27, 2012, following trial, a jury found Petitioner guilty of resisting an officer. (*Id.* at 157; Doc. No. 31 at 10.) The jury was unable to reach a verdict on the other three counts, and the trial court declared a mistrial as to those counts. (Doc. No. 20-9 at 156; Doc. No. 20-14 at 5; Doc. No. 31 at 10.) Petitioner was retried on those three counts. (*See* Doc. No. 20-14 at 5.) On retrial, Petitioner represented himself. (Doc. No. 20-3 at 5.) On June 22, 2012, a jury found him guilty on the remaining three counts. (Doc. No. 20-10 at 115–19.) The jury also found Petitioner had suffered one prior strike conviction, one prior serious or felony conviction, and had served two prison sentences. (*Id.* at 120–21.) The trial court sentenced Petitioner to seventeen years and four months in prison, including five years for the prior serious felony enhancement and one year for the prison prior enhancement. (Doc. No. 20-14 at 5.)

On March 5, 2013, Petitioner appealed to the California Court of Appeal, contending there was insufficient evidence to support the burglary conviction, thus rendering his conviction a violation of his Fifth and Fourteenth Amendment rights to due process of law; and his sentence was improper because it imposed two enhancements for the same prior conviction. (Doc. No. 20-11.) The appellate court agreed with the latter assertion, modifying Petitioner's sentence. (Doc. No. 20-14 at 9.) In all other respects, however, the appellate court affirmed the trial court. (*Id.* at 10.) Petitioner then filed a petition for review with the California Supreme Court, again asserting there was insufficient evidence to support his burglary conviction. (Doc. No. 20-15.) On April 9, 2014, the California Supreme Court denied the petition without comment or citation. (Doc. No. 20-16.)

On April 6, 2015, Petitioner filed the instant Petition, in which he alleges three grounds for relief: (1) a due process violation for his conviction for first-degree burglary because the evidence adduced at trial was insufficient to establish he had the requisite intent to steal upon entering the Tibbetts' residence; (2) a due process violation because the prosecutor presented false evidence and withheld exculpatory evidence; and (3) appellate counsel provided ineffective assistance of counsel ("IAC") for failing to raise before the

4

state appellate court the false evidence claim asserted in ground two of this Petition. (Doc. No. 1.) Though two of the grounds for relief appeared to be unexhausted, Magistrate Judge Lewis ordered Respondent to answer the Petition. (Doc. No. 15.) Respondent did so on November 5, 2015, arguing the California courts properly rejected ground one, ground two is vague and conclusory, and ground three fails because there is no showing of deficient performance or prejudice. (Doc. No. 19.) On November 27, 2015, Petitioner filed a traverse. (Doc. No. 22.)

On May 20, 2016, Magistrate Judge Lewis issued an R&R, which made the following findings: (1) there was sufficient evidence to support Petitioner's burglary conviction, specifically, that he entered the Tibbetts' residence with the requisite intent; (2) Petitioner's claim that his due process rights were violated by the presentation of false evidence and the withholding of exculpatory evidence is without merit; (3) Petitioner has not established his *Miranda* rights were violated or he was prejudiced as a result; and (4) because ground two is meritless, appellate counsel's failure to raise ground two before the California Court of Appeal did not render her assistance ineffective. (Doc. No. 30.)

Petitioner objected to the R&R on June 20, 2016. (Doc. No. 31.) While far from clear, the Court construes Petitioner's arguments as repeating the same arguments already presented before Magistrate Judge Lewis and considered in the R&R: (1) insufficient evidence exists to support his burglary conviction, (*see id.* at 10); (2) he was prejudiced by the introduction of false evidence, (*id.* at 37–39); and (3) appellate counsel was ineffective for failing to argue to the state appellate court that his conviction was obtained through the use of false evidence, (*id.* at 4–5). Respondent did not reply to Petitioner's objections.

## LEGAL STANDARD

The Petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), applying a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 & n.7 (1997)). Federal habeas relief may be granted if the state court (1) applied a

5

rule different from the governing law provided by the United States Supreme Court; or (2) correctly identified the governing legal principle, but unreasonably applied it to the facts of the case. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The duties of the district court with respect to a magistrate judge's report and recommendation are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court must "make a de novo determination of those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980); *United States v. Remsing,* 874 F.2d 614, 617–18 (9th Cir. 1989).

As to portions of the report to which no objection is made, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. U.S. Dist. Court,* 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001). Under such circumstances, the Ninth Circuit has held that a failure to file objections only relieves the district court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo. See Robbins v. Carey*, 481 F.3d 1143, 1146–47 (9th Cir. 2007).

<u>**DISCUSSION**</u>

**I.   *Insufficient Evidence Claim***

Petitioner first asserts he was denied due process because the evidence adduced at trial was insufficient to establish that he had the specific intent to commit theft when he entered the Tibbetts' residence. (Doc. No. 1 at 8–20.) In the R&R, Magistrate Judge Lewis found this claim had already been evaluated and rejected once by the state court. (Doc. No. 30 at 7–10.) Therefore, his only task was to determine whether the state court's denial of the claim was unreasonable under established federal law. *See Harrington v. Richter*, 562

U.S. 86, 100–01 (2011); *Juan H. v. Allen*, 408 F.3d 1262, 1274–75 (9th Cir. 2005).[1]

A habeas petitioner challenging a state criminal conviction based on sufficiency of the evidence is entitled to relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The critical inquiry is whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt when the evidence is viewed in the light most favorable to the prosecution. *Id.* at 318–19. If the record contains facts that support conflicting inferences, the reviewing court must presume that the trier of fact resolved any conflicts in favor of the prosecution, and defer to that determination. *Id.* at 326. Under the AEDPA, courts apply the *Jackson* standard with an additional layer of deference. *Juan H.*, 408 F.3d at 1274–75. Thus, when the last state court to consider a petitioner's claim denies it without explanation, a petitioner is entitled to relief only if "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

In evaluating a sufficiency of the evidence claim, a reviewing federal court must look to the applicable state law defining the substantive elements of the crime. *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (citing *Jackson*, 443 U.S. at 324 n.16). Under California law, a defendant commits a burglary if he or she "enters a residence . . . 'with intent to commit grand or petit larceny or any felony.'" *People v. Ramirez*, 39 Cal. 4th 398, 463 (2006) (quoting Cal. Penal Code § 459). A defendant commits first-degree burglary if the dwelling is inhabited. Cal. Penal Code § 460(a). The intent required to commit a burglary must be present at the time of entry into the residence or a room within the

---

[1] It appears Magistrate Judge Lewis undertook the same analysis as that of the California Court of Appeal, finding the evidence "supports a reasonable inference that [Petitioner] intended to commit theft at the time he entered the residence" instead of inquiring whether denial of Petitioner's claim was unreasonable. (Doc. No. 30 at 12.) However, the Court finds this error to be harmless, given that the inquiry undertaken by Magistrate Judge Lewis is a more lax standard for Petitioner to satisfy, and the Court ultimately agrees with Magistrate Judge Lewis's conclusion that Petitioner has failed to satisfy his burden here.

residence within which a crime is committed. *People v. Sparks*, 28 Cal. 4th 71, 87–88 (2002); *People v. Holt*, 15 Cal. 4th 619, 669 (1997).

Intent is rarely demonstrated by direct proof; accordingly, intent may be inferred from facts and circumstances shown through evidence. *Holt*, 15 Cal. 4th at 669–70. "[E]vidence such as theft of property from a dwelling may create a reasonable inference that there was intent to commit theft at the time of entry." *In re Leanna W.*, 120 Cal. App. 4th 735, 741 (2004). Whether entry was accompanied by the requisite intent is a question of fact for the jury. *People v. Hopkins*, 149 Cal. App. 3d 36, 44 (1983).

Here, Petitioner was convicted of first-degree burglary. In support of the finding that sufficient evidence supported Petitioner's conviction, both the California Court of Appeal and the R&R relied on the circumstantial evidence indicating that Petitioner attempted to conceal his identity during his flight from officers and when he was ultimately apprehended in the Tibbetts' front yard. Specifically, the state appellate court found it telling that Petitioner removed his black shirt and emptied his pockets as he fled police. (Doc. No. 20-14 at 6–7.) Then, when he was found, Petitioner spontaneously shouted, "[W]hat color shirt was the guy wearing that you are looking for, because I have a blue shirt." (*Id.* at 7.) He also informed police that he was in his own yard and they should check his ID. (*Id.*) That blue shirt and ID, however, belonged to Tibbetts. (*See id.*) The state appellate court concluded this evidence "strongly supports the finding that [Petitioner] was attempting to change his identity in order to avoid capture and, as relevant to [the first-degree burglary conviction], that he entered the home of Tibbetts with the intent to steal items to conceal his identity and [] to continue to evade capture from the police." (*Id.*) The R&R concludes similarly, and also notes that "the mere fact that evidence showed [Petitioner] stole the items from the Tibbetts' home can support an inference that he had intent to steal when he entered the residence." (Doc. No. 30 at 14 (citing *Leanna W.*, 120 Cal. App. 4th at 741).)

Reviewing the record *de novo*, the Court finds the California Court of Appeal's determination that the evidence at trial amply supports the jury's conviction was not contrary to, or an objectively unreasonable application of, clearly established federal law.

From the evidence relied upon by both the state appellate court and Magistrate Judge Lewis, a rational trier of fact could have found beyond a reasonable doubt that Petitioner harbored the specific intent to commit a theft when he entered the Tibbetts' residence. This is particularly so when the evidence is viewed in the light most favorable to the prosecution, as the Court is obligated to do on habeas review. *Jackson*, 443 U.S. at 318–19.

In his objections, Petitioner essentially argues the jury erred in believing the government's evidence and not his. (Doc. No. 31 at 46, 48.) He does this in a variety of ways, including by asserting that the sheriff's reports contained conflicting evidence, (*id.* at 17, 41), arguing that the testifying officers were not credible, (*id.* at 17), and relying on his own statements and testimony that contradicted the officers' version of events, (*id.* at 18, 44). (*See also id.* at 27–33 (Petitioner's evaluation of the events that transpired).) However, as the record reflects, Petitioner had the opportunity to tell, and did tell, his version of events to the jury. Petitioner testified that he removed the black shirt because he felt like he was having a heat stroke. (Doc. No. 20-6 at 58.) He explained that he approached Tibbetts's mother-in-law to ask for water and that she ushered him inside.[2] (*Id.* at 62–63.) He also stated he asked Tibbetts's wife for water and help. (*Id.* at 63–64.) Petitioner then testified that Tibbetts "offered [Petitioner] his shirt" and "took it off his own back," but Petitioner did not take it—or Tibbetts's wallet and keys—from the residence. (*Id.* at 65–66.) Rather, Petitioner testified that the sheriff's deputies took those items from the residence and planted the evidence on Petitioner. (*See id.* at 69–73.) In light of the evidence contradicting Petitioner's testimony, the jury was entitled to—and apparently did—reject his version of events. (Doc. No. 20-4 at 57; Doc. No. 20-5 at 39–40, 80, 123, 125, 129–30.) The Court will not second-guess that rejection on habeas review. *Jackson*, 443 U.S. at 326 (requiring the reviewing court to presume the trier of fact resolved any

---

[2] Tibbetts's mother-in-law's tacit permission does not undermine the circumstantial evidence of Petitioner's specific intent upon entering the residence. *See People v. Frye*, 18 Cal. 4th 894, 954 (1998) ("The entry need not be a trespass to support a burglary conviction."), *disapproved on other grounds by People v. Doolin*, 45 Cal. 4th 390 (2009).

conflicting inferences in favor of the prosecution and to defer to that resolution).

In sum, the Court finds that Petitioner has failed to carry his "heavy burden" as to ground one. *Juan H.*, 408 F.3d at 1274. The Court accordingly **OVERRULES** Petitioner's objection, **ADOPTS** the R&R in relation to ground one, and **DENIES** the Petition as to Petitioner's sufficiency of evidence claim.[3]

## II.   False Evidence Claim

Petitioner asserts he was denied due process because his conviction was based on false evidence, specifically, that it was the sheriff's deputies who removed Tibbetts's wallet and keys from the residence and planted them in the yard with Petitioner. (Doc. No. 31 at 17–20, 37.) In the R&R, Magistrate Judge Lewis concluded that despite Petitioner's failure to exhaust this claim, it is clear Petitioner has failed to present a colorable claim because (1) the presentation of a conflicting version of events does not establish the use of false evidence; (2) Petitioner failed to identify what evidence was allegedly suppressed; and (3) Petitioner has failed to establish a *Miranda* violation or, even if *Miranda* was violated, that

_____

[3] Petitioner makes additional arguments that warrant little discussion. First, Petitioner asserts the evidence is insufficient in part because there is no "actual[] physical evidence" of the crime. (Doc. No. 31 at 10.) Yet "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (quoting *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 1986)). Petitioner further asserts the California Court of Appeal erred in failing to review the sufficiency of the evidence *de novo*. (Doc. No. 31 at 39–40.) However, it is an uncontroversial statement of the law that an appellate court does not review findings of fact *de novo*, but rather affords deference to the trier of fact. *See People v. Jennings*, 50 Cal. 4th 616, 638 (2010) (stating the appellate court "neither reweigh[s] the evidence nor reevaluate[s] the credibility of witnesses" when assessing whether substantial evidence exists to support a verdict). Finally, to the extent Petitioner takes issue with the California Supreme Court's denial of his petition without comment or citation, (*see* Doc. No. 31 at 43), the United States Supreme Court has recognized that summary denial is not inappropriate, *see Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (noting § 2254(d) "applies even where there has been a summary denial"). Under such circumstances, the federal courts are required to "look through" that decision to the last reasoned state court decision, here, the decision of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991).

Petitioner was prejudiced by such violation given that he introduced the incriminating statements himself at trial. (Doc. No. 30 at 17–20.) In his objections, Petitioner reasserts only that his conviction was based upon the introduction of false evidence at trial and that forensic evidence was suppressed. (*See* Doc. No. 31 at 17, 29–33, 39–41.)[4]

"[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see Mooney v. Holohan*, 294 U.S. 103, 112 (1935). The same rule applies when the State, not soliciting false evidence, allows it to go uncorrected when it appears. *Napue*, 360 U.S. at 269. A claim under *Mooney-Napue* will succeed when "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) [] the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003). In determining materiality, the Court looks at whether there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (quoting *Belmontes v. Woodford*, 350 F.3d 861, 881 (9th Cir. 2003)). In other words, the Court must ask "whether, despite the prosecution's errors, the defendant 'received . . . a trial resulting in a verdict worthy of confidence.'" *Jackson v. Brown*, 513 F.3d 1057, 1075–76 (9th Cir. 2008) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

Petitioner did not assert this claim before the state courts. Typically, a habeas petitioner must first exhaust available state judicial remedies prior to seeking relief in federal habeas corpus proceedings. 28 U.S.C. § 2254(b); *Rose v. Lundy*, 455 U.S. 509, 522

---

[4] Petitioner raises additional grounds for prejudice he suffered during the trial: (1) Petitioner was forced to wear "county jail blues" in the jury's presence; (2) Petitioner was shackled and unable to move around in the jury's presence; (3) the trial judge "flashed a 'vacation shirt'" under his robe at the jury foreperson; and (4) Petitioner was not provided with the same technological equipment the prosecution used in presenting its case. (Doc. No. 31 at 11–13, 37–39, 46, 48–49.) These claims are not included in the instant Petition; accordingly, the Court need not address them here.

(1982). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Courts may only deny unexhausted claims on the merits if it is "perfectly clear" that the claim is not a "colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir. 2005) (quoting *Granberry v. Greer*, 481 U.S. 129, 135 (1987)). Unexhausted claims are reviewed *de novo* where there is no reasoned state court decision addressing that claim. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

Having reviewed Petitioner's argument and the record *de novo*, the Court agrees with Magistrate Judge Lewis that it is perfectly clear Petitioner's false evidence claim is not colorable. First, Petitioner does not come forth with anything other than his own explanation for the events to establish that the sheriff's deputies falsified evidence and their testimony. Simply showing that the prosecution presented the jury with a conflicting version of events does not meet Petitioner's burden on this claim. *See United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002) ("[T]he evidence proffered by Geston does not establish that the government knew, or should have known, that Sims' and Carr's testimony was false. At most, two conflicting versions of the incident were presented to the jury. It was within the province of the jury to resolve the disputed testimony." (citations omitted)).[5]

_____

[5] And the jury in Petitioner's case did resolve this conflict—against Petitioner. At trial, Petitioner presented his version of events, the version proffered here, through his testimony and cross-examination of the sheriff's deputies. (*See* Doc. No. 20-5 at 46, 130; Doc. No. 20-6 at 69–73.) The Court will not question the jury's credibility determination. *See Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (per curiam) ("[a] jury's credibility determinations are [] entitled to near-total deference"); *United States v. Zuno-Arce*, 44 F.3d 1420, 1422–23 (9th Cir. 1995) ("If the jury believed Godoy and Lopez, the evidence sufficed to establish that Zuno-Arce attended and participated in the meetings as they said. As for whether they lied, or erred in their perceptions or recollections, the judge properly left these questions to the jury. Zuno-Arce's attorneys cross-examined Godoy and Lopez thoroughly and well on the discrepancies in their recollections, and the recency of some of their recollections. The district court was not obligated to decide the credibility question

Second, even if Petitioner carried this initial burden, he has utterly failed to provide any evidence that the prosecution knew or should have known that the testimony was actually false. *See Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001) ("Assuming for the sake of argument that Laufenburger's testimony . . . was false, Murtishaw presents no evidence that the prosecution knew it was false."). For these reasons, the Court agrees with Magistrate Judge Lewis's assessment that Petitioner has failed to state even a colorable claim that the use of false evidence violated Petitioner's due process rights.

Petitioner also asserts that exculpatory evidence was suppressed, namely, that the sheriff's deputies refused to undertake fingerprint or DNA analysis of Tibbetts's wallet. (Doc. No. 31 at 32.) Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Favorable evidence is "material" only if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense. *United States v. Bagley*, 473 U.S. 667, 682 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678).

Petitioner's *Brady* claim must fail. The prosecution's case did not hinge on forensic science. Rather, multiple witnesses testified that Tibbetts's keys and wallet were found *in* Petitioner's pockets. (Doc. No. 20-4 at 57; Doc. No. 20-5 at 49–50.) Petitioner testified at length about his version of events, as well as cross-examined the prosecution's witnesses

---

and strike their testimony, because the determination of credibility is for the jury." (citations omitted)).

in an attempt to undermine their credibility. (*See* Doc. No. 20-5 at 46, 130; Doc. No. 20-6 at 69–73.) In light of the evidence that was presented at trial, the Court is not convinced that the failure to conduct forensic testing on the wallet undermines the confidence that can be placed on the jury's verdict. Additionally, because the wallet was never submitted for testing, there were no reports for production to Petitioner. "The prosecution therefore did not 'suppress' any evidence for the simple reason that those reports did not exist." *Herring v. McEwen*, No. SA CV 11-781 DMG (MRW), 2012 WL 960674, at *5 (C.D. Cal. Jan. 10, 2012). The Court thus **OVERRULES** Petitioner's objection, **ADOPTS** the R&R in relation to ground two, and **DENIES** the Petition as to Petitioner's false evidence claim.

### III.   *Ineffective Assistance of Counsel Claim*

Lastly, Petitioner argues appellate counsel was ineffective for failing to raise the claims in ground two before the California Court of Appeal. (Doc. No. 1 at 47.) In the R&R, Magistrate Judge Lewis rejected this claim based on his determination that ground two is meritless. (Doc. No. 30 at 21–22.) Petitioner objects, reasserting the arguments presented in the Petition. (Doc. No. 31 at 4–5.)

In order to succeed on an IAC claim, a petitioner must establish two criteria: (1) counsel's performance was so deficient as to fall short of the guarantee of counsel under the Sixth Amendment, and (2) counsel's errors were so prejudicial that the petitioner was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("The proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*." (citing *Smith v. Murray*, 477 U.S. 527, 533–36 (1986))). This *Strickland* standard is highly deferential to counsel based upon the ease of second-guessing one's counsel after an adverse conviction or sentence is entered. *Strickland*, 466 U.S. at 689. When analyzing an IAC claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* This standard is heightened when raised in a federal habeas petition. *Harrington*, 562 U.S. 86 at 100–01.

Having reviewed this unexhausted claim *de novo*, *Pirtle*, 313 F.3d at 1167, the Court

agrees with Magistrate Judge Lewis that Petitioner's IAC claim must fail. As explained in the previous section, ground two is plainly meritless. *See supra* Discussion Section II. Given that conclusion, appellate counsel's performance was not deficient, and the failure to assert the claim before the Court of Appeal clearly could not have prejudiced Petitioner. The Court therefore **OVERRULES** Petitioner's objection, **ADOPTS** the R&R in relation to ground three, and **DENIES** the Petition as to Petitioner's IAC claim.

## IV.    *Certificate of Appealability*

When a district court enters a final order adverse to the applicant in a habeas corpus proceeding, it must either issue or deny a certificate of appealability, which is required to appeal a final order in a habeas corpus proceeding. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability is appropriate only where the petitioner makes "a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (quoting 28 U.S.C. § 2253(c)(2)). Under this standard, the petitioner must demonstrate that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Here, the Court finds that reasonable jurists could not debate the Court's conclusion to deny the Petition and therefore **DECLINES** to issue a certificate of appealability.

## CONCLUSION

Based on the foregoing, the Court **OVERRULES** Petitioner's objections, (Doc. No. 31), **ADOPTS** the R&R in its entirety, (Doc. No. 30), **DENIES** Petitioner's petition for writ of habeas corpus, (Doc. No. 1), and **DECLINES** to issue a certificate of appealability. **IT IS SO ORDERED.**

Dated:  February 6, 2017

Hon. Anthony J. Battaglia
United States District Judge